**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In re the Matter of the Personal Restraint of | No. 46091-2-II |
| BRUCE LEE FRITZ, | UNPUBLISHED OPINION |
| Petitioner. | |

LEE, J. — Bruce Lee Fritz brings this personal restraint petition after this court affirmed his convictions of four counts of first degree child rape and two counts of first degree child molestation. We hold that (1) Fritz received ineffective assistance of trial counsel because trial counsel failed to object to the prosecutor's improper closing argument and trial counsel made comments that prejudiced Fritz during his own closing arguments; (2) Fritz received ineffective assistance of appellate counsel because appellate counsel failed to raise the issue of ineffective assistance of trial counsel on direct appeal; and (3) because the issue may come up on retrial, we further hold that Fritz's constitutional rights were not violated by the witnesses' religious references.[1] Accordingly, we grant Fritz's personal restraint petition and remand for new trial.

---

[1] Fritz also argues that his trial counsel was ineffective in (i) failing to object to the religious references, (ii) failing to object to the testimony of the medical expert, and (iii) failing to call two different witness. Fritz further argues that the cumulative effect of the errors requires he be given a new trial. Given our holding, we do not address these claims.

FACTS

On a Saturday afternoon in March 2010, L.M.F.[2] told her mother that Fritz had tried to have sex with her "fifteen or more" times in the past. Verbatim Report of Proceedings (VRP) at 168. Fritz was dating L.M.F.'s mother at the time, and the three lived together. L.M.F.'s mother immediately went to the garage and confronted Fritz about L.M.F.'s allegations. Fritz denied the allegations. The three then went to L.M.F.'s maternal grandmother's house. After spending an hour talking about the allegations with L.M.F.'s grandmother, Fritz and L.M.F.'s mother drove home, leaving L.M.F. to spend the night with her grandmother. Back at home, L.M.F.'s mother testified that she and Fritz continued the discussion, and eventually, Fritz admitted to twice rubbing his penis on L.M.F.'s privates. L.M.F.'s mother called the police.

The State charged Fritz with four counts of first degree child rape and two counts of first degree child molestation. The State also charged Fritz with two aggravators on each count—that Fritz engaged in an ongoing pattern of sexual abuse by committing multiple incidents of abuse over a prolonged period of time and that Fritz's conduct was an abuse of trust.

The testimony at trial suggested the abuse occurred from the time L.M.F. was around six years old until she was about eight years old. The prosecutor asked L.M.F. why she did not tell her mother immediately following a particular instance of abuse, but chose to tell her mother about the abuse when she did. L.M.F. testified that God told her to tell her mother while she was reading

---

[2] We use initials to protect the minor victim's privacy interests. General Order 2011-1 of Division II, In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases, available at: http://www.courts.wa.gov/appellate_trial_courts/

the Bible at church. L.M.F.'s mother testified that L.M.F. said that God had told L.M.F. it was time to tell.

During closing argument, the prosecutor argued that the jury had a duty to convict Fritz unless it found that L.M.F. was lying. The prosecutor also made references to how Fritz "destroyed . . . [L.M.F.'s] innocence." VRP at 364. Fritz did not object to these comments.

During the defense's closing argument, trial counsel argued that, "the issue here is not whether it happened or not. There is a big issue as to time here." VRP at 374. Trial counsel also told the jury that Fritz had made two admissions of guilt, when there was only evidence of one such admission at trial.

The jury found Fritz guilty on all charges and returned special verdicts on the two aggravators for each count.[3] The trial court sentenced Fritz to 360 months.

Fritz appealed, claiming several instances of prosecutorial misconduct. *State v. Fritz*, noted at 169 Wn. App. 1035 (2012). In an unpublished decision, we affirmed, holding that while the prosecutor did commit misconduct in closing argument, Fritz did not object at trial and the prosecutor's improper comments did not result in prejudice incurable by a jury instruction. *Fritz*, noted at 169 Wn. App. 1035, 2012 WL 3090932, at *4. The Washington Supreme Court denied review and Fritz's case was mandated on May 23, 2013. *State v. Fritz*, 176 Wn.2d 1027 (2013). Fritz timely filed this personal restraint petition. RCW 10.73.090(3)(b).

---

[3] The jury found that Fritz committed an ongoing pattern of sexual abuse by committing multiple incidences of abuse over a prolonged period of time and an abuse of trust on all counts.

3

ANALYSIS

A.   PERSONAL RESTRAINT PETITION

"When considering a timely personal restraint petition, courts may grant relief to a petitioner only if the petitioner is under an 'unlawful restraint,' as defined by RAP 16.4(c)." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 16, 296 P.3d 872 (2013) (quoting RAP 16.4(c)). The collateral relief afforded under a personal restraint petition is limited and requires the petitioner to "show that he was prejudiced by the alleged error of the trial court." *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 819, 650 P.2d 1103 (1982). There is no presumption of prejudice on collateral review. *Id.* at 823. The petition does not serve as a substitute for appeal; nor can the petition renew an issue that was raised and rejected on appeal, unless the interests of justice so require. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004).

The petitioner must either make a prima facie showing of a constitutional error that, more likely than not, constitutes actual and substantial prejudice, or a nonconstitutional error that inherently constitutes a complete miscarriage of justice. *In re Pers. Restraint of Stockwell*, 161 Wn. App. 329, 334, 254 P.3d 899 (2011), *aff'd*, 179 Wn.2d 588, 316 P.3d 1007 (2014). Without either showing, we must dismiss the petition. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990). However, when the petitioner has not had a previous opportunity to obtain judicial review, such as on claim for ineffective assistance of appellate counsel, this heightened standard does not apply. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).

The petitioner's allegations of prejudice must present specific evidentiary support. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). Such support may come in a variety of evidentiary forms, but it must be competent, admissible,

and establish a factual basis for the allegations. *Id.* Bald assertions and conclusory allegations are not sufficient. *Id.* If a petitioner makes a prima facie showing of actual and substantial prejudice, but the merits of his assertions cannot be determined on the record, we will remand for a hearing pursuant to RAP 16.11(a) and RAP 16.12. *Hews*, 99 Wn.2d at 88.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Fritz argues he received ineffective assistance of counsel at trial and on appeal. We hold that Fritz's trial counsel provided ineffective assistance by failing to object to the prosecutor's improper comments during closing argument and making prejudicial statements during his own closing argument. We also hold that Fritz's appellate counsel was ineffective for failing to raise the errors on direct appeal.

1.    Legal Principles

Our Supreme Court has held that a personal restraint petitioner meets his burden to show actual and substantial prejudice when he makes a successful ineffective assistance of counsel showing under *Strickland*.[4] *In re the Pers. Restraint of Crace*, 174 Wn.2d 835, 842, 846-47, 280 P.3d 1102 (2012). Therefore, to establish ineffective assistance of counsel in a collateral attack, Fritz need only show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). There is a strong presumption of effective assistance, and Fritz

---

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

bears the burden of demonstrating the absence of a strategic reason for the challenged conduct. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). To show prejudice, Fritz must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. If Fritz fails to satisfy either prong, we need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

To prevail on an ineffective assistance of appellate counsel claim, Fritz "must show the merit of the underlying legal issues his appellate counsel failed to raise . . . and then demonstrate actual prejudice." *In re the Pers. Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835 (1994). "Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance, however." *Id.*

2.    Trial Counsel

Fritz argues he received ineffective assistance of counsel at trial because his counsel (a) did not object to the misconduct in the prosecutor's closing argument and (b) made statements in his own closing argument that were prejudicial. We agree.

a. Failure to object to prosecutor's misconduct in closing argument

On direct appeal, we held the prosecutor's closing argument that the jury must disbelieve L.M.F. in order to acquit Fritz was improper because it misstated the burden of proof and the jury's role. *Fritz*, 2012 WL 3090932, at *2. The State conceded that this argument was improper. *Id.*

6

In addition, we held that the prosecutor's repeated references to Fritz destroying L.M.F.'s innocence were improper because they appealed to the jury's passion and prejudice. *Id.*[5]

Our holding was based on well-settled law. *Id.*; *see State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018 (1997). Given the nature of the prosecutor's comments, there was no legitimate, strategic, or tactical reason for trial counsel not to object. Trial counsel had no reason to allow the prosecutor to misstate the burden of proof or to appeal to the jury's passion and prejudice. Therefore, we hold that trial counsel was deficient in not objecting to the prosecutor's improper closing argument.

b. Trial counsel's statements in closing argument

Trial counsel stated in closing argument, "But, the issue here is not whether it happened or not. There is a big issue as to time here." VRP at 374. Trial counsel also informed the jury that Fritz made two admissions of guilt to L.M.F.'s mother, instead of just the one that was brought out in testimony. The first statement essentially was a concession that Fritz committed the alleged acts against L.M.F. The second statement then provided the jury with evidence that had not been presented at trial and that was extremely damaging to Fritz.

There was no legitimate, strategic, or tactical reason for trial counsel to essentially concede that the abuse occurred. Fritz's defense was that the abuse did not occur, and this statement was contrary to the defense's strategy to attack the credibility of L.M.F.'s story as a story fabricated by a little girl. In addition, there was no legitimate, strategic, or tactical reason for trial counsel to tell

---

[5] We held that any prejudice could have been cured by a jury instruction to disregard the comments. *Fritz*, 2012 WL 3090932, at *2.

the jury about a second admission of guilt by Fritz that had not been introduced at trial. Therefore, we hold that trial counsel's performance was deficient.

c. Prejudice

Even though trial counsel's performance was deficient, Fritz still must satisfy his burden in this collateral attack to show actual and substantial prejudice. *Crace*, 174 Wn.2d at 846-47. He has made such a showing.

In his direct appeal on the issue of prosecutorial misconduct, because trial counsel did not object below, we held Fritz to a heightened standard of review. We held that "[b]ecause the prejudice [the prosecutor's] argument caused was curable by a jury instruction," Fritz's prosecutorial misconduct challenge failed. *Fritz*, 2012 WL 3090932, at *4. Thus, trial counsel's failure to object to the prosecutor's improper arguments during closing prejudiced Fritz.

Also, there is a reasonable probability that but for trial counsel's concession and revelation of a second admission by Fritz, the results of the trial would have been different. *McFarland*, 127 Wn.2d at 335. The only evidence of Fritz's guilt was L.M.F.'s testimony and the testimony of those whom L.M.F. told about the abuse. There was no physical evidence to corroborate L.M.F.'s testimony.

Even if each error may not have created sufficient prejudice to justify reversal, when combined, there is a reasonable probability that but for the deficient performance, the results of the trial would have been different. *McFarland*, 127 Wn.2d at 335. Because of trial counsel's deficient performance, the jury heard (1) a misstatement of the State's burden of proof, (2) an argument that improperly appealed to their passion and prejudice, (3) trial counsel essentially concede that the abuse occurred, and (4) information not presented at trial that Fritz had admitted

a second time that he abused L.M.F. Given the evidence at trial, a reasonable probability exists that but for trial counsel's deficient performance, the jury may have found the State failed to prove its case beyond a reasonable doubt.

We hold that trial counsel's performance was deficient and, as a result, Fritz sustained actual and substantial prejudice. *Crace*, 174 Wn.2d at 846-47. Accordingly, we grant Fritz's personal restraint petition.

3. Appellate Counsel

Fritz argues he received ineffective assistance of appellate counsel because his appellate lawyer neglected to raise the issues he now brings in his petition. We agree.

To prevail on an ineffective assistance of appellate counsel claim, Fritz "must show the merit of the underlying legal issues his appellate counsel failed to raise . . . and then demonstrate actual prejudice." *Lord*, 123 Wn.2d at 314. "Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance, however." *Lord*, 123 Wn.2d at 314.

Because Fritz has shown that he received ineffective assistance of counsel and that actual and substantial prejudice resulted from the deficient performance, Fritz has established the merits of this underlying issue his appellate counsel failed to raise. Therefore, we hold that Fritz received ineffective assistance of appellate counsel.

C. RELIGIOUS REFERENCES

Fritz, argues that his "rights under Article I, Section 11 of the Washington Constitution and the Due Process Clause of the State and Federal Constitutions were violated" by L.M.F.'s and her mother's repeated references to God and the Bible as the reason that L.M.F. chose the particular day to tell her mother of the alleged abuse. Br. of Pet'r at 9-10 (boldface omitted). We disagree.

9

Article I, section 11 of the Washington Constitution concerns religious freedom and states, in relevant part:

> No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony.

To support his argument that the references to religion made by L.M.F. and her mother infringed on his constitutional rights, Fritz cites federal and state case law outside of Washington. Fritz's claim fails because all of the cited cases are procedurally and factually dissimilar.

Fritz cites *Sandoval v. Calderon*, where the Ninth Circuit granted habeas corpus relief from a death sentence because the prosecutor's closing argument during the penalty phase "invoked divine authority and paraphrased a Biblical passage as support for the imposition of the death penalty." 241 F.3d 765, 778 (9th Cir. 2000), *cert. denied*, 534 U.S. 847 (2001). The two other federal cases that Fritz cites involve the presence of Bibles in the jury room, and conclude that a juror's personal use of a Bible or the presence of a Bible in the jury room did not constitute error. *See Jones v. Kemp*, 706 F. Supp. 1534, 1560 (1989) and *United States v. Lara-Ramirez*, 519 F.3d 76, 88 (2008).

Fritz also cites several state court cases from foreign jurisdictions. For example, in *State v. Ceballos*, 266 Conn. 364, 383, 832 A.2d 14 (2003), the Connecticut Supreme Court held the prosecutor committed misconduct because the prosecutor's arguments not only directly invoked religious characters, "but also impliedly reference[d] notions of divine punishment for worldly transgressions." The Delaware Supreme Court applied a similar rationale to its holding of prosecutorial misconduct where the prosecutor's closing argument "characterized the defendants .

10

. . as 'despicable' people to whom the Bible 'doesn't mean anything.'" *Hooks v. State*, 416 A.2d 189, 204 (1980). Finally, in *Commonwealth v. Chambers*, 528 Pa. 558, 585-86, 599 A.2d 630 (1991), *cert. denied*, 504 U.S. 946 (1992) and *People v. Tully*, 54 Cal. 4th 952, 1078, 282 P.3d 173, 145 Cal. Rptr. 3d 146 (2012), *cert. denied*, 133 S. Ct. 1271 (2013), Pennsylvania and California courts, respectively, held that it was improper for prosecutors to rely on the Bible or other religious writings as support for imposing the death penalty.

Unlike the cases relied on by Fritz, the references to God and the Bible made by L.M.F. and her mother during their testimony were not incorporated into the prosecutor's argument to the jury. In *Sandoval*, *Ceballos*, *Hooks*, *Chambers*, and *Tully*, the courts' holdings turned on the fact that the religious references were made by the prosecutor as part of the prosecutor's closing argument. In contrast, the prosecutor here did not make a single religious reference to God or the Bible in her closing argument or in her rebuttal.

Furthermore, the prosecutor's questioning of L.M.F. and her mother that elicited references to God and the Bible cannot be said to have been "clearly intended to appeal to religious authority," as was the case of the prosecutor's closing in *Sandoval*. 241 F.3d at 780. Neither L.M.F.'s nor her mother's testimony related to how the jury should ultimately decide the case; instead, their testimony was merely an explanation of why L.M.F. decided to come forward on that particular Saturday afternoon, rather than coming forward immediately following an instance of abuse. Consequently, Fritz's argument that the witnesses' testimony referencing God and the Bible violated his constitutional rights fails.

11

No. 46091-2-II

We grant Fritz's personal restraint petition and remand for a new trial.

A majority of the panel having determined that this opinion will not be published in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Maxa, J.

12