2016 SEP -6 AM 8:35
COURT OF APPEALS DIV 1

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 73178-5-I |
| | ) | |
| ARMONDO THEODOR LAFORGE, | ) | DIVISION ONE |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | FILED: September 6, 2016 |
| | ) | |

APPELWICK, J. — The original charges of first degree robbery and first degree rape automatically put 16 year old LaForge in adult criminal court. A plea agreement reduced the charges to second degree robbery and second degree rape and no longer triggered automatic adult court jurisdiction. No waiver of juvenile court jurisdiction was filed and no decline hearing was held. In a personal restraint petition, LaForge argues that the adult criminal court lacked authority to sentence him and that his trial counsel provided ineffective assistance by failing to move to transfer to juvenile court. He seeks to be sentenced as a juvenile, or alternatively, to receive a juvenile decline hearing. We grant the petition and remand for a decline hearing.

FACTS

On December 22, 2002, Armondo LaForge and Julian Molzhon approached C.D. as he walked to work. LaForge and Molzhon robbed C.D. And, LaForge raped C.D.

The State charged LaForge with rape in the first degree and robbery in the first degree. Because LaForge was 16 years old when these crimes were alleged to have been committed, the State filed the charges in adult criminal court rather than juvenile court. Former RCW 13.04.030(1)(e)(v)(A), (C) (2000) (giving the adult criminal court exclusive authority over serious violent offenses and robbery in the first degree if the juvenile is 16 or 17 years old). On December 4, 2003, the State amended the information to include a deadly weapon enhancement on each charge.

The parties reached a plea agreement on December 12, 2003. In accordance with this agreement, on December 15, the State amended the charges against LaForge to rape in the second degree and robbery in the second degree, without a deadly weapon enhancement. The reduced charges no longer triggered automatic adult court jurisdiction. See id.; former RCW 13.40.110(1), (2) (1997). No waiver of juvenile court jurisdiction was obtained, and no decline hearing was held.

LaForge pleaded guilty to both counts. LaForge was sentenced on March 19, 2004 in adult criminal court. He requested an exceptional sentence downward.

The trial court refused to impose an exceptional sentence downward, but it imposed a low end sentence due to LaForge's age.

LaForge was sentenced to 14 months on the robbery conviction and 95 months on the rape conviction, to run concurrently. The court imposed a lifetime term of community custody. LaForge did not file a direct appeal, and he served his prison term of ten years. He remains subject to community custody. On November 25, 2014, LaForge filed a pro se personal restraint petition (PRP). . He was appointed counsel to assist him with his petition.

## DISCUSSION

A petitioner may request relief through a PRP when he or she is under unlawful restraint.[1] In re Pers. Restraint of Monschke, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). The collateral relief available through a PRP is limited. Id. A petitioner must raise a new constitutional error or a new nonconstitutional error that inherently results in a miscarriage of justice. In re Pers. Restraint of Lord, 123 Wn.2d 296, 303, 868 P.2d 835 (1994). To obtain relief, the petitioner must show that he or she was actually and substantially prejudiced by the error. Id.

LaForge contends that his trial counsel provided ineffective assistance, because the adult court lost authority over him when the State amended the charges, but his attorney did not move to transfer the case to juvenile court. The State agrees that the adult court lacked authority to sentence LaForge after the

---

[1] LaForge is under restraint because he is under a lifetime term of community custody due to his second degree rape conviction. RAP 16.4(b) (noting that a petitioner under some disability resulting from a judgment or sentence is under restraint).

3

charges were amended, although it disputes LaForge's claim of ineffective assistance. The parties disagree as to the appropriate remedy.

I.   Ineffective Assistance of Counsel

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to effective assistance of counsel in criminal proceedings.   Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996).  To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy a two-part test.  State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).  First, counsel's conduct must have fallen below an objective standard of reasonableness.  Id.  Second, there must be a reasonable probability that this deficiency was prejudicial.  Id.  A showing of prejudice under this test is sufficient to satisfy the actual and substantial prejudice necessary to grant relief in a PRP.  In re Pers. Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012); Monschke, 160 Wn. App. at 491.

If a juvenile was 16 or 17 years old when the offense was committed, and the alleged offense is a serious violent offense, the adult court automatically has exclusive authority over the case.  Former RCW 13.04.030(1)(e)(v)(A).  Such charges are called automatic decline offenses.  See State v. Knippling, 166 Wn.2d 93, 101, 206 P.3d 332 (2009).  LaForge was initially charged with two automatic decline offenses: first degree robbery and first degree rape.  Former RCW 13.04.030(1)(e)(v)(A), (C); former RCW 9.94A.030(37)(vii) (2002) (defining

4

"serious violent offense" as including first degree rape). The State properly charged LaForge with these crimes in adult criminal court.

But, once the State amended the charges so that LaForge was no longer charged with serious violent offenses, the adult criminal court no longer had exclusive authority. See former RCW 13.04.030(1)(e)(v)(A), (C); Knippling, 166 Wn.2d at 100. At that point, the juvenile court was required to hold a decline hearing, at which it could have ordered the case transferred for adult criminal prosecution if declination would be in the best interest of the juvenile or the public. Former RCW 13.40.110(1), (2). Or, the court, the parties, and their counsel could have waived the decline hearing requirement. Former RCW 13.40.110(1). However, neither situation happened here. The parties did not file an agreed order and the juvenile court did not hold a decline hearing. Instead, the adult court continued to sentence LaForge. The court erred in doing so without a waiver or a decline hearing.[2]

When counsel's conduct can be characterized as a legitimate trial strategy or tactic, counsel's performance is not deficient. State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). LaForge asserts that there was no tactical reason behind his trial counsel's failure to request a transfer to the juvenile court. Instead, he argues that this was a mere oversight. Here, LaForge's counsel urged the

---

[2] Because the adult court lacked authority to sentence LaForge, the petition is not procedurally barred by RCW 10.73.090, which prohibits a petition for collateral attack on a judgment and sentence from being filed more than a year after the judgment becomes final, if the judgment and sentence was valid on its face and rendered by a court of competent jurisdiction.

5

sentencing court to consider LaForge's age and to order detention at a juvenile facility. This suggests that counsel would have moved to transfer the case to juvenile court so LaForge might have had the opportunity to be sentenced as a juvenile if counsel had realized the effect of the amended charges.

LaForge had a right to a decline hearing. Had asserting that right jeopardized the plea agreement, LaForge also had the right to waive the decline hearing and preserve the plea. Ignoring the right to a decline hearing and merely arguing for juvenile sentencing considerations in adult court did not provide any tactical advantage. Counsel's apparent failure to realize that the amended charges deprived the adult court of automatic authority over LaForge cannot be construed as a tactical decision. His failure to move to transfer the case constituted deficient performance.

LaForge contends that he was prejudiced by this deficient performance, because he was deprived of the opportunity to be sentenced in juvenile court. In response, the State contends that LaForge cannot establish prejudice, because the record does not support the assumption that the juvenile court would have retained the case, and any error is remedied by remand for a decline hearing. We disagree with the State's contention. The court rejected such an argument in In re Personal Restraint of Dalluge, 152 Wn.2d 772, 788, 100 P.3d 279 (2004). There, the court noted that Dalluge was prejudiced by his appellate counsel's failure to raise the issue, because if appellate counsel had raised the issue on direct appeal, Dalluge would have been entitled to a de novo hearing. Id. It was the denial of

6

the hearing, not an assumption that the hearing would have resulted in a favorable outcome that prejudiced Dalluge. Id. Similarly, had LaForge's trial counsel moved for the case to be transferred to the juvenile court, LaForge would have been entitled to a decline hearing. This is sufficient to show prejudice. He need not show that the juvenile court would have retained jurisdiction.

Once the State amended the charges against LaForge, his trial counsel should have moved for the case to be transferred to the juvenile court for a decline hearing. Counsel's failure to do so prejudiced LaForge and constituted ineffective assistance of counsel.

## II.    Remedy

LaForge asserts that the appropriate remedy is to remand the case for imposition of a juvenile sentence, without a decline hearing. Alternatively, he asks for a decline hearing. If his case is remanded for a decline hearing, LaForge argues that the trial court should first determine whether a fair hearing is feasible given the passage of time.

The Washington Supreme Court has recognized that when a juvenile who is deprived of a decline hearing after charges are amended from automatic decline offenses to nonautomatic decline offenses, the appropriate remedy is a decline hearing. Dalluge, 152 Wn.2d at 776, 786-87. In Dalluge, the court noted that where the defendant has since turned 18, the appropriate remedy is to remand to the adult criminal court for a hearing on whether declination would have been

appropriate. Id. If the case would have been declined, the conviction stands. Id. at 787. If not, the defendant is entitled to a new trial. Id.

LaForge asserts that two recent Washington Supreme Court cases have modified the remedy described in Dalluge. He argues that under State v. Maynard, 183 Wn.2d 253, 351 P.3d 159 (2015) and State v. Posey, 174 Wn.2d 131, 134, 272 P.3d 840 (2012) (Posey II), we may remand for sentencing consistent with the Juvenile Justice Act of 1977[3] (JJA) without a decline hearing.

We disagree. Posey was charged with an automatic decline offense and three nonautomatic decline offenses, and he was convicted of only the nonautomatic decline offenses. State v. Posey, 161 Wn.2d 638, 641, 167 P.3d 560 (2007) (Posey I). The Washington Supreme Court held that the case should have been remanded to the juvenile court for a decline hearing for sentencing once Posey was acquitted of the automatic decline offense. Id. at 647. It remanded to the juvenile court for a decline hearing. Id. at 649. Posey received a hearing on remand, where he argued that the juvenile court had no authority over him, since by that point he was 21 years old. Posey II, 174 Wn.2d at 134. The court agreed, and it sentenced him as if he were in adult criminal court to a standard range sentence under the JJA. Id. at 134-35. On appeal, Posey argued that no court had authority to sentence him, because he was acquitted of the automatic decline offense and because he was over 21 so the juvenile court no longer had authority over him. Id. at 140. The Supreme Court rejected this notion, holding that the

---

[3] Ch. 13.40 RCW.

8

superior court properly sentenced Posey. Id. at 140-41. And, the court upheld Posey's standard range juvenile sentence. Id. at 133.

In Maynard, the Washington Supreme Court held that the defendant received ineffective assistance of counsel when his attorney failed to notice that the defendant was about to turn 18. 183 Wn.2d at 260-61. As a result of this failure, the juvenile court dismissed the charges against Maynard when he turned 18, and the State filed charges in superior court. Id. at 257-58. The Supreme Court remanded for further proceedings consistent with the JJA, noting that this would put Maynard in the same position he was in before the time to extend juvenile jurisdiction lapsed. Id. at 264. And, the court stated that if Maynard was convicted, the trial court may still impose a juvenile sentence. Id.

Neither Posey II nor Maynard held that the proper remedy for a juvenile defendant who was entitled to a decline hearing before he could be sentenced in adult criminal court is to remand for sentencing in accordance with the JJA without a decline hearing. We reject LaForge's invitation for us to do so here. We adhere to Dalluge in this regard, and hold that LaForge's case must be remanded to the superior court for a decline hearing. Under Posey II and Maynard, if the superior court on remand determines that the juvenile court would not have declined its authority over the case, it should sentence LaForge in accordance with the JJA. But, if the court determines that the juvenile court would have declined the case, LaForge's original sentence will stand.

9

LaForge further asserts that the trial court on remand must make a feasibility determination before it can conduct a decline hearing. He compares a decline hearing to a competency hearing to assert that the trial court must first inquire as to whether a meaningful decline hearing is still possible, given the passage of time.

This argument is not persuasive. The passage of time is inevitable in any retrospective decline hearing. Yet, Washington courts have never required such a determination to be made before a decline hearing can be held. See, e.g., Dalluge, 152 Wn.2d at 786-87 (remanding for a de novo hearing on whether declination would have been appropriate); State v. Meridieth, 144 Wn. App. 47, 58, 180 P.3d 867 (2008) (same); State v. Anderson, 83 Wn. App. 515, 522, 922 P.2d 163 (1996) (same).

Nor is LaForge's comparison to competency hearings helpful here. In that context, a feasibility determination means that there is still sufficient evidence to reliably determine whether the defendant was competent at an earlier time. State v. P.E.T., 174 Wn. App. 590, 606, 300 P.3d 456 (2013), modified on remand, 185 Wn. App. 891, 344 P.3d 689 (2015). But, at a decline hearing, the State must prove by a preponderance of the evidence that declination is in the best interest of the juvenile or the public. State v. Jacobson, 33 Wn. App. 529, 531-32, 656 P.2d 1103 (1982). In making a decision concerning declination, the court may consider a number of factors, including:

> (1) the seriousness of the alleged offense and whether the protection of the community requires declination; (2) whether the offense was

committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against persons or only property; (4) the prospective merit of the complaint; (5) the desirability of trial and disposition of the entire case in one court, where the defendant's alleged accomplices are adults; (6) the sophistication and maturity of the juvenile; (7) the juvenile's criminal history; and (8) the prospects for adequate protection of the public and rehabilitation of the juvenile through services available in the juvenile system.

State v. Furman, 122 Wn.2d 440, 447, 858 P.2d 1092 (1993). Accurate evaluation of these factors is nowhere near as time sensitive as a determination that a defendant was competent at an earlier point in time.

Here, the seriousness of the offense, its violent manner, and its target can be established by the crimes charged and the facts stated in the certification of probable cause. LaForge's partial confession and the fact that some of his actions were corroborated by video surveillance confirm the violent nature of the robbery and support the merit of the complaint. LaForge's accomplice, Molzhon, pleaded guilty and has already been sentenced—there is no question of the desirability of resolving the case in one court. And, whether LaForge had a criminal history at the time can be determined by looking at the judgment and sentence. Thus, only two factors may be affected by the passage of time: (1) LaForge's sophistication and maturity and (2) the prospects for adequate protection of the public and LaForge's rehabilitation through the juvenile system. But, not all eight factors must be proved for declination to be in the best interest of the public or the juvenile. Furman, 122 Wn.2d at 447. Instead, the factors exist to help guide the court's discretion. Id. That two factors may be more difficult to ascertain now does not mean that a decline hearing is no longer feasible. We reject LaForge's argument

that a feasibility determination must first be made before a decline hearing can be held.

We grant the petition and remand to the superior court for a decline hearing. If the superior court determines that the case would not have been declined, LaForge should be resentenced in accordance with the JJA. If the case would have been declined, LaForge's original sentence stands.

_Appelwick, J._

WE CONCUR:

_Schindler, J._        _Becker, J._