# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  56193-0-II |
| ROBERT DESHAWN GROTT, | |
| Petitioner. | UNPUBLISHED OPINION |

PRICE, J. — Robert D. Grott brings this personal restraint petition (PRP) seeking relief from unlawful restraint on five grounds.  Grott argues: (1) the State knowingly presented false testimony at trial, (2) he was denied his right to present a defense when the trial court excluded a statement made to his expert witness, (3) the judge impermissibly commented on the evidence when he omitted the word "kill" from the first aggressor jury instruction, (4) the State did not provide sufficient evidence to meet its burden of proof for mens rea for the charged crime, and (5) he received ineffective assistance of counsel at trial and on appeal.[1]  We disagree and deny Grott's petition.

---

[1] This PRP, filed pro se, was initially consolidated by this court with Grott's subsequent PRP. Comm'r Ruling Consolidating, *PRP of Grott*, No. 56193-0-II, consolidated with No. 56413-1-II (Dec. 30, 2021).  Appointed counsel then filed a Supplemental Brief.  The State's Response Brief addressed arguments made in *both* Grott's initial PRP *and* Grott's Supplemental Brief.  Later, in July 2022, this court deconsolidated the two PRPs.  *See* Comm'r Ruling Deconsolidating (July 12, 2022).  Counsel was provided for Grott for this initial PRP, but he requested, and was permitted, to remain pro se.  Order Granting Motion to Modify Comm's Ruling (Oct. 12, 2022).  This opinion only addresses the claims raised in Grott's initial PRP.

FACTS

## I. BACKGROUND

In February 2016, when passing by a busy gas station, Grott saw Julian Thomas in the parking lot with his friend Petra Smith. Grott began firing his firearm at Thomas, firing a total of 48 rounds, killing Thomas. The gunshots shattered the windows of the gas station, but no one else was injured.

Grott was charged with first degree murder of Thomas and seven counts of first degree assault for the bystanders in the gas station. All charges alleged that Grott committed the offense while armed with a firearm.

Prior to trial, the trial court ordered Grott to submit to a psychiatric examination at Western State Hospital "for the purpose of assessing the capacity of the defendant to have the following mental states of mind which are relevant to the offenses charged . . . (2) intent to cause the death of another person . . . ." State's Resp. to PRP, App. at 88.

The case proceeded to a lengthy jury trial.

## II. THE TRIAL

## A. TRIAL TESTIMONY

At trial, Grott argued two affirmative defenses—diminished capacity due to post-traumatic stress disorder (PTSD) and self-defense.

Dr. Kevin Moore, a psychiatrist, had examined Grott prior to trial and testified on his behalf. Dr. Moore stated that Grott suffered from PTSD, which affected his ability to form the intent required for first degree murder. Prior to his testimony, the State moved to exclude as hearsay a statement Grott made to Dr. Moore when Grott told him that he and Thomas "locked

2

eyes" right before the shooting. Clerk's Papers (CP) at 748; 15 Verbatim Rep. of Proc. (VRP) (Apr. 18, 2017) 1876-77. Grott argued the statement was admissible as a statement for medical treatment under ER 803(a)(4). The trial court ruled the statement was inadmissible as hearsay.

Thomas' friend, Smith, testified for the State, stating she had seen Grott about five minutes prior to the shooting ride his skateboard up to the gas station. She stated he was acting like he was on drugs and took his jacket off. On cross-examination, Smith said she had told police officers at the scene that she saw Grott walk up to the gas station, but admitted she did not tell the police officers the part about seeing Grott take off his jacket and pace back and forth.

Dr. Ray Hendrickson, a forensic psychologist at Western State Hospital, also testified for the State. Dr. Hendrickson said he was asked to evaluate whether Grott was impaired regarding "his ability to form a particular element or elements required in the alleged crime at the time of the offense." 17 VRP (Apr. 20, 2017) at 2145. Dr. Hendrickson had diagnosed Grott with adjustment disorder and cannabis use disorder, but testified that the symptoms of adjustment disorder would not likely interfere with someone's ability either to form intent or to premeditate.

On cross-examination, Dr. Hendrickson agreed that the psychosocial assessment appeared to identify the reason for Grott's admission to Western State Hospital as a competency evaluation. However, Dr. Hendrickson was unable to say what the social worker who completed the form believed or understood about the specifics of Grott's admission.

B. JURY INSTRUCTIONS

The jury was instructed on first and second degree murder, manslaughter, and first degree assault. The jury was also instructed on self-defense as a defense to murder and assault. The State had proposed a pattern first aggressor instruction, which stated,

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

CP at 929. The trial court allowed the instruction, but inexplicably omitted the word "kill" in the final version of the instruction. The instruction read, in part,

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon another person. Therefore, if you find beyond a reasonable doubt . . . .

CP at 1035. Grott did not object to the trial court's first aggressor instruction.

C. VERDICT

The jury convicted Grott of second degree murder for Thomas and seven counts of first degree assault for the bystanders while armed with a firearm.

III. PROCEDURAL HISTORY

Grott appealed his convictions. Among his arguments, Grott asserted the trial court's mistake in giving the first aggressor instruction was reversable error. In an unpublished opinion, we agreed and reversed Grott's convictions. *State v. Grott*, noted at 7 Wn. App. 2d 1065 (Mar. 5, 2019) (*Grott I*), *remanded*, 195 Wn.2d 256, 458 P.3d 750 (2020). Our Supreme Court granted review and reversed our decision, holding that Grott had not preserved his objection to the first aggressor instruction and the instruction was properly given. *State v. Grott*, 195 Wn.2d 256, 458 P.3d 750 (2020). Our Supreme Court remanded the case back to this court to consider the remaining issues on appeal. *Id.* at 275.

Following remand, we analyzed Grott's numerous arguments, including evidentiary decisions by the trial court, allegations of prosecutorial misconduct, sufficiency of the evidence,

and the application of case law regarding youth sentencing. *State v. Grott*, No. 50415-4-II, slip op. at 1 (Wash. Ct. App. Nov. 3, 2020) (unpublished) (*Grott II*). Specifically, we affirmed the trial court's ruling excluding Grott's statement that he locked eyes with Thomas. *Grott II*, slip op. at 14.[2] We determined both that the trial court did not abuse its discretion in ruling the statement was hearsay and the exclusion did not violate Grott's right to present his defense because the statement was not highly probative and he was able to present other evidence on his state of mind and fear at the time of the shooting. *Grott II*, slip op. at 17, 19. We affirmed Grott's convictions but remanded the case to the trial court to strike the criminal filing fee and interest on the nonrestitution legal financial obligations. *Grott II*, slip op. at 1-2.

Grott then filed this timely PRP.[3]

## ANALYSIS

### I. PERSONAL RESTRAINT PETITIONS

Persons who are unlawfully restrained may be granted relief by this court. RAP 16.4(a). "Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).

---

[2] https://www.courts.wa.gov/opinions/pdf/D2%2050415-4-II%20Unpublished%20Opinion.pdf.

[3] Generally, petitioners have one year from the date their judgment and sentence becomes final to bring a PRP. RCW 10.73.090. A judgment becomes final on "[t]he date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction." RCW 10.73.090(3)(b). Grott's appeal became final on March 31, 2021, and he filed his PRP within one year on September 15, 2021.

No. 56193-0-II

When reviewing a PRP, we have three options: to deny, grant, or remand for a full hearing on the merits. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). PRPs require the petitioner to demonstrate error. *In re Pers. Restraint of Sandoval*, 189 Wn.2d 811, 821, 408 P.3d 675 (2018). To be entitled to relief in a PRP, the petitioner must show either a constitutional error that resulted in actual and substantial prejudice, or a nonconstitutional error that constituted a fundamental defect that inherently results in a complete miscarriage of justice. *Id.*

The petitioner is "prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004) (footnotes omitted). This requirement may not be avoided " 'merely by supporting a previous ground for relief with different factual allegations or with different legal arguments.' " *Yates*, 177 Wn.2d at 17 (quoting *Davis*, 152 Wn.2d at 671).

II. FALSE TESTIMONY

Grott argues the State knowingly presented false testimony when it allowed Smith to testify at his trial about events that occurred just prior to the shooting.[4] We disagree.

A. LEGAL PRINCIPLES

Prosecutors may not knowingly present false evidence or testimony to obtain a conviction. *Napue v. Illinois*, 360 U.S. 264, 269-70, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). A " 'conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside

---

[4] The State argues we should deny review of this issue because it was addressed in Grott's direct appeal. In his direct appeal, Grott argued the prosecutor committed misconduct by calling witnesses the prosecutor knew would lie. *Grott II*, slip op. at 41. This court suggested there was no evidence in the record that the prosecutor knew Smith would perjure herself but declined to review because his argument related to matters outside the record. *Grott II*, slip op. at 41. Therefore, because the merits of the issue were not addressed on appeal, review is appropriate.

6

if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 936, 952 P.2d 116 (1998) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)).

To prevail on this claim, a petitioner must show that "(1) the testimony . . . was actually false, (2) the prosecutor knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003), *cert. denied*, 540 U.S. 1208 (2004).

B. APPLICATION

Grott points to Smith's testimony where she testified she had seen Grott on his skateboard shortly after arriving at the gas station and that he had taken his jacket off and was acting strangely. He argues this was false testimony because on cross-examination Smith testified she had told police she saw Grott walk up to the bus station and admitted she did not tell police she had seen Grott take his jacket off.

Grott relies only on trial testimony for this claim, providing no additional evidence that any of this testimony was actually false and the prosecution knew or should have known the testimony was false. At most, the modest differences in Smith's testimony goes to her credibility. But there is simply nothing Grott points to establishing that the prosecutor had any knowledge about false testimony. This claim fails.

III. EXCLUDED STATEMENT MADE TO DR. MOORE

Grott argues the trial court denied his constitutional right to present a defense when it did not admit a statement he made to Dr. Moore about locking eyes with Thomas.[5] He contends the statement was admissible under ER 401, 402, 702, and 703. The State argues this issue was addressed on Grott's direct appeal, where the court rejected it, thus we should deny review. We agree with the State.

In his direct appeal, we determined the trial court properly excluded Grott's statement to Dr. Moore as hearsay under ER 801(c) and that the statement did not qualify as a hearsay exception under ER 803(a)(4). *Grott II*, slip op. at 16-19. Grott again argues here in his PRP that his statement to Dr. Moore was admissible. Notwithstanding the fact that Grott identifies some additional evidentiary rules this time, these are merely different legal arguments for the same ground for relief as his direct appeal. *See Yates*, 177 Wn.2d at 17. Therefore, we deny review of this issue.

IV. FIRST AGGRESSOR INSTRUCTION

Grott argues the judge impermissibly commented on the evidence when he omitted the word "kill" in jury instruction 39, therefore ultimately impeding his ability to present a defense. We disagree.

---

[5] It is unclear in Grott's petition which statements Grott is referring to that should have been admissible. We assume, as did this court in Grott's direct appeal, that Grott refers to the statement regarding Grott and Thomas "locking eyes." *Grott II*, slip op. at 14 ("The only excluded evidence expressly referenced in the record is Grott's statement to Dr. Moore that Grott and Thomas 'locked eyes.' ").

A. LEGAL PRINCIPLES

We review jury instructions de novo. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "A judge is prohibited by article IV, section 16 of the state constitution from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.' " *Id.* (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

B. APPLICATION

Grott claims the judge purposefully omitted the word "kill" from the jury instruction which was an impermissible comment on the evidence done to bolster Smith's testimony and affect his ability to present his theory of self-defense.

It is unclear why the word "kill" was omitted; one might speculate it was inadvertent. But Grott provides no evidence that the judge intentionally omitted the word and no explanation of how this would bolster Smith's testimony. Simply put, regardless of how or why the word "kill" was omitted, it was not an improper comment on the evidence by the judge because it did not convey the judge's personal attitude toward the merits of the case. This claim fails.

V. SUFFICIENCY OF EVIDENCE

Grott argues the State did not meet its burden to prove he had the requisite mental state because it did not disprove his diminished capacity defense. We disagree.

A. LEGAL PRINCIPLES

The State must prove beyond a reasonable doubt all necessary facts of the charged crime. *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006). We review challenges to sufficiency of the evidence by determining whether any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the State. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In reviewing a claim of insufficient evidence, all reasonable inferences are drawn in favor of the State and interpreted against the defendant. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). A defendant admits the truth of the State's evidence and all reasonable inferences that can be inferred from that evidence. *Id.* Circumstantial and direct evidence are equally reliable in sufficiency of the evidence challenges. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014).

B. APPLICATION

Grott argues that personnel at Western State Hospital believed he was there only for a competency assessment and, therefore, the State somehow did not properly disprove his diminished capacity defense.

First, Grott's linkage of potential misunderstanding of some staffers at Western State Hospital and the issue of whether the State carried its burden is unpersuasive. The trial court order was clear that Grott was to be evaluated for mental capacity with respect to intent, not competency. And even if some personnel at Western State Hospital misunderstood why Grott was at the hospital, Dr. Hendrickson, the evaluating doctor, did not. Dr. Hendrickson testified Grott was evaluated regarding his mental capacity to form the requisite mental state of the charged crime and Grott had no mental condition that prevented him from doing so. Whether or not others at Western State Hospital assumed something else about Grott's presence is simply irrelevant to whether the State proved its case.

Second, Grott is mistaken when he asserts the State was required to disprove his diminished capacity defense; the State was only required to disprove beyond a reasonable doubt Grott's self-

defense claim, not his diminished capacity defense. *See State v. Sao*, 156 Wn. App. 67, 76-77, 230 P.3d 277 (2010) ("[D]iminished capacity does not add an additional element to the charged offense, which the State must disprove at trial."), *review denied*, 170 Wn.2d 1017 (2011). Therefore, whether the State did or did not disprove Grott's diminished capacity defense is immaterial.

Because the State did not have to disprove Grott's diminished capacity defense and misunderstandings by staffers at Western State Hospital are irrelevant, this claim fails.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Grott finally argues he received ineffective assistance of counsel by his trial counsel and his appellate counsel for five reasons. He argues that he received ineffective assistance from both counsel for failing to argue at trial and on appeal that his statements to Dr. Moore were admissible under ER 702 and 703, and for failing to object at trial and argue on appeal the omission of the word "kill" on the first aggressor instruction. Specific to his appellate counsel, Grott argues he received ineffective assistance for arguing on appeal that *Houston-Sconiers*[6] applied to his case and for arguing that the State was required to prove the actus reus of his crime. Lastly, Grott argues these errors were cumulative. We disagree.

## A. LEGAL PRINCIPLES

To show they received ineffective assistance of counsel, a petitioner must show both that the attorney's performance was deficient and that the deficiency prejudiced the appellant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (known as

---

[6] 188 Wn.2d 1, 391 P.3d 409 (2017).

the "*Strickland* test"); *Yates*, 177 Wn.2d at 35. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Defense counsel's performance is not deficient if it is a legitimate trial tactic. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). We engage in a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33.

"To satisfy the prejudice prong of the *Strickland* test, the defendant must establish that 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *Id.* at 34 (quoting *Kyllo*, 166 Wn.2d at 862). A petitioner that makes a successful ineffective assistance of counsel claim has necessarily met the actual and substantial prejudice PRP standard. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Similarly, a defendant also has the right to effective assistance of appellate counsel. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). To show he received ineffective assistance of appellate counsel, a petitioner must prove that (1) the legal issue appellate counsel failed to raise or raised improperly had merit, and (2) he suffered actual prejudice as a result. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835, *cert. denied*, 513 U.S. 849 (1994).

"Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance." *Dalluge*, 152 Wn.2d at 787. Independent judgment in deciding which issues to argue on appeal is "at the heart of the attorney's role in our legal process." *Lord*, 123 Wn.2d at 314.

A petitioner can show that he was actually prejudiced by demonstrating there is a reasonable probability that but for his appellate counsel's unreasonable failure to raise the issue, he would have prevailed on his appeal. *Dalluge*, 152 Wn.2d at 787-88.

B. APPLICATION

1. Failure to Argue Dr. Moore's Statements Were Admissible Under ER 702 and 703

Grott argues he received ineffective assistance of counsel because his trial counsel failed to argue his statements to Dr. Grott were admissible under ER 702 and ER 703 at trial, and his appellate counsel failed to argue this on appeal.

As discussed above, both trial counsel and appellate counsel *did* argue that the trial court's exclusion of the evidence was error, and we affirmed the exclusion on direct appeal. Again, Grott ties his argument this time to different evidentiary rules. Whether or not he is entitled to make this argument,[7] he cannot show prejudice. We specifically found in his direct appeal that the evidence was not highly probative and its exclusion did not violate Grott's right to present a defense. Without such violation, Grott cannot show a reasonable probability that the outcome of his trial or his appeal would have been different. Therefore, both of these claims fail.

---

[7] *See In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001) ("A defendant may not recast the same issue as an ineffective assistance claim; simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previously rejected claim.").

2. Failure to Object To the First Aggressor Instruction

Grott argues he received ineffective assistance of counsel because his defense counsel failed to object to the omission of the word "kill" on the first aggressor instruction and his appellate counsel failed to argue this on appeal.

However, Grott fails to establish how this omission would have had any impact on the jury. As discussed above, the omission of the word "kill" in the first aggressor instruction was unexplained. But even if it was deficient for trial counsel to have missed the mistake, Grott cannot show prejudice without persuasively explaining what effect the omission would have had. For the same reason, Grott also fails to show he would have been successful had his appellate counsel raised this issue during his direct appeal. This claim fails.

3. Ineffectively Arguing *Houston-Sconiers* Applied on Appeal

Grott argues he received ineffective assistance of counsel because it was inappropriate for appellate counsel to argue *Houston-Sconiers* applied to him as he was 29 years old at the time of the crime.

Grott fails to show he was prejudiced by appellate counsel's arguments. On direct appeal, we rejected the extension of *Houston-Sconiers* to Grott because he was not a juvenile. *Grott II*, slip op. at 34. But Grott makes no persuasive argument that but for appellate counsel unsuccessfully raising *Houston-Sconiers* his appeal would have been successful. This claim fails.

4. Ineffectively Arguing Actus Reus Was a Necessary Element on Appeal

Grott argues he received ineffective assistance of counsel because it was inappropriate for his appellate counsel to argue the actus reus of second degree murder was a necessary element the State was required to prove, and instead should have argued the State did not prove he had the requisite mental state.[8]

Again, Grott fails to show he was prejudiced by appellate counsel's arguments. While it is true the argument was unsuccessful, Grott makes no showing that but for this argument his appeal would have been successful. This claim also fails.

5. Cumulative Error

Grott argues he is entitled to relief because of the cumulative effect of his defense counsel's and appellate counsel's errors.

Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair. *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012).

Here, Grott has not shown error, much less cumulative errors, and therefore, is not entitled to a new trial.

CONCLUSION

Each of Grott's grounds for relief fails. We deny Grott's petition.

---

[8] In his first direct appeal, we determined that the State was not required to prove the actus reus as an element of the charged crime. *Grott I*, noted at 7 Wn. App. 2d * 5.

No. 56193-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

VELJACIC, J.